ROOD, Respondent, *v.* MURRAY, Appellant.

(No. 3,466.)

(Submitted January 11, 1915. Decided January 30, 1915.)

[146 Pac. 541.]

*Principal and Agent — Contracts of Employment — Public Officers—Personal Liability—Evidence—Insufficiency—Entirety of Contract—Pleading—Estoppel—Witnesses—Weight of Testimony—Dismissal of Cause.*

Appeal and Error—Conflict in Evidence—Verdict Conclusive.
1. A judgment will not be reversed for alleged insufficiency of the evidence where the record shows a substantial conflict therein.

Principal and Agent—Public Officers—Personal Liability—Evidence—Insufficiency.
2. Evidence in an action in which defendant was sought to be held personally liable on a contract of employment alleged to have been made with the plaintiff while the former was superintendent of construction of public buildings for the state, *held* insufficient to support a verdict for plaintiff.

[As to liability of agent employing real estate broker for the latter's commission, see note in Ann. Cas. 1913E, 345.]

Evidence—Weight—How Determined.
3. The legal value of the evidence of a witness is not determined by his positive assertions alone, but by its entire content in the light of his admissions and contradictions.

Principal and Agent—Contracts—Public Officers—Personal Liability.
4. The rule that one dealing with the agent of a known principal in a matter within the scope of the agency cannot hold the agent, in the absence of satisfactory proof of the latter's intention to substitute his personal liability for that of the principal, is especially applicable to the case of an officer entering into a non-negotiable agreement for the performance of a public duty, it being presumed that he did not undertake personally to assume the public burdens.

Same—Pleading—Entirety of Contract—Estoppel.
5. Plaintiff having pleaded the contract of employment as an entirety could not thereafter assert that part of it was with the state at a certain wage per day, and the other part with defendant personally on a commission basis.

[As to entirety of contract when for services or other work, see note in 38 Am. Rep. 208.]

Appeal and Error—Dismissal of Cause, When.
6. Where plaintiff has had a fair opportunity to prove his cause of action and on appeal it appears that he obviously presented all he had to offer in that behalf, and failed, the cause will be ordered dismissed.

*Appeal from District Court, Beaverhead County; Wm. A. Clark, Judge.*

ACTION by Carl M. Rood against William V. Murray. Judgment for plaintiff, and defendant appeals from it and an order denying him a new trial. Reversed, and cause ordered dismissed.

*Mr. J. A. Poore,* for Appellant, submitted a brief and argued the cause orally.

Rood knew that Murray was the agent of the state—the "superintendent," as he alleges in his complaint—and he therefore stood in the same position as an officer of the state, of which fact Rood had knowledge. One standing and acting in a public capacity, who makes a contract in behalf of the public, is not personally liable. (*Simonds* v. *Heard,* 23 Pick. (Mass.) 120, 34 Am. Dec. 42; *McCurdy* v. *Rogers,* 21 Wis. 197, 91 Am. Dec. 468.) In order for a public officer to bind himself personally, the evidence must show the intent to be clear. (*Miller* v. *Ford,* 4 Rich. (S. C.) 376, 55 Am. Dec. 691; *Sanborn* v. *Neal,* 4 Minn. 126, 77 Am. Dec. 502.) Public officers and agents will not be held personally liable upon contracts entered into by them in the public behalf, except in those cases where the intent is clearly apparent to bind them. (Mechem on Public Officers, sec. 806; 29 Cyc. 1446, and cases cited.) And action on the part of an officer in excess of his legal authority will not have the necessary effect of imposing upon him a personal liability, since those with whom he is dealing cannot be deceived by him. The extent of his authority may be ascertained by an examination of the law. (29 Cyc. 1447.) A well-defined distinction is made by the law between contracts entered into by the agent of a private principal and those of the agents of the public. It is considered presumed that the latter do not intend personally to assume the public burdens, and that the persons dealing with them do not rely upon their individual responsibility. (Mechem on Public Officers, sec. 805.)

If a person contracting with an agent has actual or presumptive knowledge that the agent has no authority to bind the principal, the agent cannot be held personally liable. And an agent

who, acting within the scope of his authority, enters into a contractual relation for a disclosed principal does not bind himself in the absence of an express agreement. (31 Cyc. 1550, 1552.) A party claiming that exclusive credit was given to the agent of a known principal has the burden of proving the fact by clear evidence. (*Meeker* v. *Claghorn,* 44 N. Y. 349; *Ferris* v. *Kilmer,* 48 N. Y. 300.) The rule is still stronger in the case of a public agent. (*Hall* v. *Lauderdale,* 46 N. Y. 70.) In order for Mr. Murray to be held personally liable in this case, the evidence must at least preponderate in favor of respondent. (Sec. 8028, Rev. Codes; *Flaherty* v. *Butte Electric Ry. Co.,* 42 Mont. 89, 111 Pac. 348.) Under the circumstances, and the record presented in this case, it was the duty of the trial court to grant a new trial. The testimony of the prevailing party is certainly not sufficient in weight to justify a verdict in his favor. (*Mullen* v. *City of Butte,* 37 Mont. 183, 190, 95 Pac. 597.)

*Messrs. Pease & Stephenson,* for Respondent, submitted a brief; *Mr. Harlow F. Pease* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The complaint in this action alleges: "That the defendant was, at all the times hereinafter mentioned, the general superintendent in charge of construction and repair work on the buildings belonging * * * to the Montana State Normal College, located at Dillon; * * * that the said construction and repair work consisted in erecting new foundation walls, columns, and other general repair work on the dormitory building, putting a new roof on the college building, and doing certain repair work about the boiler-room; * * * that on or about the 7th day of June, 1910, the said defendant hired and employed plaintiff to work as a laborer, and also as superintendent of the work above mentioned, agreeing to pay him therefor $6 per day for his services as laborer, and for his services as superintendent five per cent of the cost of such work," which was $15,400; that plaintiff performed his part of the contract; that "no part of the sum due

the plaintiff on the contract above set forth has been paid, except the wages for his services as laborer''; and that there is due him as commission for superintendence the sum of $770, with interest, for which judgment is demanded. The answer admits the non-payment of such commission, denies any personal contract with the plaintiff, and alleges that defendant was, at all the times referred to, acting as an employee of the state of Montana, to-wit, its superintendent of construction under the control of the State Board of Examiners, as plaintiff then knew; that plaintiff was employed by the state of Montana as a laborer and as super-intendent of said work, in the absence of defendant, at the agreed compensation of $6 per day of eight hours, and seventy-five cents an hour overtime; that plaintiff presented his claims to, and re-ceived his pay from, the state of Montana for all services per-formed by him. The reply denies each and every allegation con-tained in the answer.

The trial was to a jury, and their verdict was for the plaintiff. Judgment followed accordingly. Motion for new trial was made and denied. The defendant appeals from the judgment and or-der denying him a new trial.

The sole question presented is whether the verdict and judg-ment are warranted by the evidence. Mindful of the oft-repeated rule that this court cannot reverse for insufficiency of the evidence where the record shows a substantial conflict, we shall, for the purpose of ascertaining whether there is such con-flict, consider only the case as made by the plaintiff's own testi-mony, coupled with such circumstances presented by the defend-ant, as the plaintiff does not question nor deny. [1, 2]

On January 4 plaintiff was invited by telephone to go with defendant to examine the State Normal College, then in need of extensive repairs, with a view to taking charge of such work under the defendant. He did so, and after the examination ex-pressed his willingness to proceed with the work. The parties then returned to Butte to look up material, and plaintiff dates his right to compensation from this time, though no terms had been agreed upon. He established himself at Dillon about June

8 and started work upon the ground. Ten or twelve days later the parties again met at Dillon, discussed and settled the wages that were to be paid for the different classes of labor; those of common carpenters being fixed at $5 per day. This done, plaintiff inquired about his own wages, and defendant answered: "Well, on work of this kind it is usual that the superintendent gets about ten per cent; but I want you to be more than superintendent. I want you to take your tools here and have your working clothes here, and go down with the men and put on your overalls, handle your tools, and lay out the work for yourself. * * * Being that I want you to be personally posted on the work as well as taking charge, I have thought of paying you common carpenter wages, ordinary carpenter wages, and five per cent of cost, so that you would take interest in both parts of it equally. * * * Murray did not say then that the state of Montana would pay me five per cent. He said, 'When the job is finished I will give you five per cent.' Murray did not say anything to me at this time as to whether this contract was in his name or not. I did not know whether he was acting as contractor or superintendent. It was not in my interest to know. I was dealing personally with Mr. Murray. I had never heard that he was dealing with me as a state employee. I had nothing to do with any state officials, any state board, or anything of that kind." The contention of the plaintiff is that the foregoing and other positive assertions of like import contained in the record are sufficient to establish, *prima facie,* that his contract was with the defendant personally and not as superintendent, and therefore sufficient, as against any opposition the defendant could make under his answer, to create a substantial conflict and to sustain the verdict. Taken alone and at face value, we may assume that they are. But the right of the plaintiff to make this contention is extremely doubtful, in view of the first paragraph of the complaint, for that is without purpose, unless the defendant made the contract as general superintendent in charge of the work. The positive assertions of the [3] plaintiff cannot be taken alone, without regard to his

formal allegations or to what he says elsewhere in his testimony. The legal value of a body of evidence is to be determined by its entire content, and not by any single feature, the effect of which may be destroyed by admissions or contradictions emanating from the same source. Plaintiff further testified: "Q. When did you first become aware of the fact that Murray was acting for the state and not for himself? A. I do not suppose I had been there more than two weeks until I knew."

Asked on cross-examination if the defendant did not, at the time the agreement was made, say anything "about being superintendent of the work at the Capitol building and simply acting for the state of Montana down here, and he wanted a man to come and take his place in this work." the plaintiff answered: "He said he wanted a competent man; that is what he wanted me to be. As to his position as superintendent, I knew that before. Q. When did you first find that out? A. I found that out; he was called here from New York in the winter-time to consider the acceptance of the position at the Capitol building, superintendent of construction of the Capitol building, so I knew his capacity as superintendent of construction of the Capitol wings."

On redirect: "Q. During the time that you were working on the State Normal College, did you know Murray's exact official capacity in the state of Montana? A. I did know it in one respect, as I stated yesterday. I knew before he took his office as superintendent of construction of the State Capitol that he was to come here to occupy that position as superintendent of construction or supervisor of construction of the Capitol wings. About the time that I was employed to go to Dillon he made the statement that he also had to take the position of superintendent of construction of public buildings as well. * * * When we agreed upon my compensation, I said, 'How am I to be paid?' He said, 'You put in your claim to the state and send it to me.' Then I asked him: 'Who am I dealing with? Am I dealing with the state or am I to understand I am dealing with the State Board of Examiners or any of the state

officials?' He said, 'No, sir; you are my man here.' " Touching this last circumstance the plaintiff admitted on recross-examination that he had not remembered it upon any of the three examinations concerning the same matter to which he had been previously subjected. Asked if Murray "was superintendent of construction, who was he superintendent for," plaintiff answered: "For the state of Montana, I suppose." He later added: "I had nothing to do with the state, not directly, because Murray hired me, made all the arrangements, gave me my instructions."

The upshot of all this, to take the view most favorable to plaintiff, is that he meant to stand upon his pleading and to show a single contract for two things (carpenter work and superintendence); that when the contract was entered into he knew the Normal College to be a public building of the state; that he understood the defendant to be superintendent of construction of public buildings for the state, and therefore incapable of having a private contract for the work; but that, notwithstanding this, he assumed his contract to be with the defendant personally, because he dealt with the defendant, who used the pronoun "I" in defining the duties and compensation of the plaintiff. This is not enough. There is no contention here that the defendant is liable because he acted beyond his powers; [4] and one who deals with the agent of a known principal, touching a matter within the scope of the agency, cannot hold the agent in the absence of satisfactory proof of an intention on the part of the agent to substitute his personal liability for that of the principal. (31 Cyc. 1552; *Hall* v. *Lauderdale*, 46 N. Y. 70.) This is especially true in the case of a public officer who has entered into an agreement, not negotiable, for the performance of a public duty; "the intent of the officer to bind himself personally must be very apparent, indeed, to induce such a construction of the contract." (*Hodgson* v. *Dexter*, 1 Cranch, 345, 2 L. Ed. 130.) In such a case, it is to be presumed that he did not undertake personally to assume the

public burdens.    (Mechem on Agency, sec. 426; Mechem on Public Officers, secs. 805, 806.)

Whether the plaintiff did actually believe his contract to be as pleaded, and the value of his positive assertions in that regard, are further illuminated by the following circumstances: Between June 16, 1910, and November 22, 1910, he presented at intervals of about two weeks, upon forms provided by the state for the purpose, eleven claims against the state, verified by his oath.    These claims covered all his wages for labor and overtime as they accrued, traveling expenses for consultation with the defendant, postage charges on reports to defendant, and other items.    They were sent addressed to the defendant as state superintendent of construction, were paid from time to time by warrants of the state, and these warrants were received, indorsed, and turned into money by the plaintiff.    Conceding this to be the fact, he seeks to distinguish between his wages and the compensation for superintendence.    He charges Murray with saying: "You put in your claim for the day's wages the same as you do the rest of the men, and when the job is finished I will give you five per cent."    But no such distinction can be made under the contract as pleaded; nor is it borne out by the [5] claims mentioned above.    The contract as pleaded is an entirety.    If any part of it was with the state, all of it was; and the claims presented and paid covered items which could accrue to the plaintiff only as a foreman or person more or less in charge of the work.    Moreover, on April 1, 1911, in a. letter to defendant as superintendent, regarding some work to be done at Dillon, the plaintiff wrote: "With reference to the work at Dillon, in view of the possibility of nearly half of it, or probably more than half, being let on contract, and in such case I would not have more than equal chance with a number of others, if it can be counted that I would have that much, I would appreciate to know if there is any reasonableness in expecting foreman's wages or more than day's wages, as was talked of last year, and if the president of the institution and the State Board of Examiners know that I did not get more than common wages

last year, so it would not be considered unreasonable or attempting to take advantage of anything or anybody to ask for it.'' The plaintiff's efforts to explain this letter simply add to his difficulties. No demand for payment of the present claim was ever made until after defendant had resigned his office and after a difference between them, amounting to $200, had arisen out of another transaction. The plaintiff's view of the present claim, up to that time, may be gathered from the following: ''Q. Is it not a fact, Mr. Rood, that the only reason you commenced this suit was because you had some other difficulty with Mr. Murray wherein you claimed he owed you additional money for some work you did for him in 1911, and you sent your attorney to Mr. Murray, and your attorney told Mr. Murray that if he did not pay that claim you would commence suit against him for the five per cent and also for the other claim? A. It is the truth, I guess. Q. That is the truth. You admit that, don't you? A. Yes, sir. Q. If Mr. Murray had paid you the claim which you claimed was due in that other suit, you would not have brought this suit? Answer, 'Yes' or 'No.' A. That I do not know.''

In view of the foregoing, as well as of other circumstances apparent in the record, we think it impossible to give to the positive assertions of the plaintiff any value whatever. He knew, or should have known, that his contract was with the state, and there is no substantial evidence to justify any other conclusion.

The judgment and order appealed from are reversed; and as **[6]** the plaintiff has had one fair opportunity to prove his cause of action, has obviously presented all he had to offer in that behalf, and has failed, the district court is directed to dismiss the case.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied February 27, 1915.