BACHMAN, RESPONDENT, *v.* GERER, APPELLANT.

(No. 4,827.)

(Submitted May 27, 1922. Decided June 27, 1922.)

[208 Pac. 891.]

*Principal and Agent—Contracts—Personal Liability of Agent —Presumptions — Evidence — Legal Value — Insufficiency— Nonsuit.*

Witnesses—Evidence—Legal Value—How Determinable.
    1.  The legal value of the evidence of a witness is to be determined by its entire contents and not by a single feature the effect of which may be destroyed by his admissions or contradictions.

Principal and Agent—Contracts—Personal Liability of Agent—Presumptions.
    2.  A person dealing with the agent of a known principal touching a matter within the scope of the agency cannot hold the agent in the absence of satisfactory proof of an intention on the part of the agent to substitute his personal liability for that of the principal, the presumption being that he dealt with the principal, which is not overcome by the agent's use of the pronoun "I" in dealing with such person.

Same—Personal Liability of Agent—Evidence—Insufficiency—When Nonsuit Proper.
    3.  In an action to recover for farm produce alleged to have been sold to defendant, who was then the manager of a co-operative association dealing in such produce and in which plaintiff was a stockholder, *held* that the court erred in refusing to grant a nonsuit, where the only evidence tending to connect defendant personally with the transaction had in the store of the association was that in dealing with plaintiff he used the pronoun "I."

*Appeals from District Court, Ravalli County; Asa L. Duncan, Judge.*

ACTION by J. A. Bachman against O. M. Gerer. From a judgment for plaintiff and the order overruling motion for new trial, defendant appeals. Reversed.

*Messrs. O'Hara & Madeen,* for Appellant, submitted a brief; *Mr. Robert A. O'Hara* argued the cause orally.

It is a well-established principle of law that an agent assumes no personal liability in transacting the business of a known principal, unless there is a direct assumption of liability on his part. (*Anderson* v. *Timberlake,* 114 Ala. 377, 62 Am.

St. Rep. 105, 22 South. 431; *Alexander & Edgar Lumber Co.*
v. *McGeehan,* 124 Wis. 325, 102 N. W. 571.)

The decision of this court is that the presumption is that
the agent, under such circumstances, intends to bind the prin-
cipal and not himself. (*Roach* v. *Rutter,* 40 Mont. 167, 171,
105 Pac. 555.) To hold the defendant liable on the testimony
adduced is to make a new contract for the parties, which a
court cannot do. (*Michigan College* v. *Charlesworth,* 154 Mich·
522, 20 N. W. 566.)

·The facts admitted raise a presumption of law that the de-
fendant, acting as manager of the corporation, assumed no
personal liability, and this presumption must prevail in the
absence of direct positive testimony that credit was given
exclusively to O. M. Gerer, personally, and that he was in-
formed of it. (*Tripplet* v. *Littlefield,* 46 Wash. 156, 89 Pac.
493.) "Liability is to be determined by the condition known
at the time the contract was entered into, or transaction had."
(*Pancoast* v. *Dinsmore,* 105 Me. 471, 134 Am. St. Rep. 582, 75
Atl. 43; *Meade Plumbing, Heat & L. Co.* v. *Irwin,* 77 Neb. 385,
109 N. W. 391.)

The receipt given for the first carload of potatoes and re-
tained by the plaintiff without objection was signed by Equity
Co-operative Association, and it, taken in connection with the
fact that this action is brought on a balance of account ar-
rived at by deducting the amount of the association check
accompanying the statement from the amount plaintiff claimed
the defendant owed him on the two carloads of potatoes in
question, estops plaintiff from claiming that this was not a
transaction with the Equity Co-operative Association. (*Gor-
don* v. *Brinton,* 55 Wash. 568, 133 Am. St. Rep. 1038, 104
Pac. 832.)

*Mr. J. D. Taylor,* for Respondent, submitted a brief and ar-
gued the cause orally.

While it is true that plaintiff-respondent knew that defend-
ant-appellant was manager of the Equity, it is also true that he

knew that defendant-appellant dealt in potatoes individually,
and he testified to this fact. The above fact, alone, distin-
guishes the case at bar from the cases of *Anderson* v. *Timber-
lake,* 114 Ala. 377, 62 Am. St. Rep. 105, 22 South. 431, and
*Alexander & Edgar Lumber Co.* v. *McGeehan,* 124 Wis. 325,
102 N. W. 571, cited by appellant. The next case cited by
him is *Pancoast* v. *Dinsmore,* 105 Me. 471, 134 Am. St. Rep.
582, 75 Atl. 43. We submit that the holding therein is an
emphatic statement of the law as applicable to the case at
bar, but that it in no way supports the contention of appel-
lant. We quote from the note to the last above case, as follows:
"An agent contracting in his own name cannot escape liability
by pleading that he acted as the agent of another," citing
*Stewart-Morehead & Co.* v. *Postal Tel. Cable Co.,* 131 Ga. 31,
127 Am. St. Rep. 205, 18 L. R. A. (n. s.) 692, 61 S. E. 1045;
*Amans* v. *Campbell,* 70 Minn. 493, 68 Am. St. Rep. 547, 73
N. W. 506; *Shuey* v. *Adair,* 18 Wash. 188, 63 Am. St. Rep. 879,
39 L. R. A. 473, 51 Pac. 388; *Morris* v. *Malone,* 200 Ill. 132,
93 Am. St. Rep. 180, 65 N. E. 704.

HONORABLE ROY E. AYERS, District Judge, sitting in
place of MR. CHIEF JUSTICE BRANTLY, disqualified,
delivered the opinion of the court.

Plaintiff brought this action on May 3, 1919, in the district
court of Ravalli county, for $626.05, an alleged balance due
him for 86,615 pounds of potatoes sold and delivered by him to
defendant on January 11, 1919, at an agreed price of $1.30
per hundredweight. Defendant admits the deliverey of the
potatoes, but alleges that in the transaction he acted solely as
the agent and manager of the Equity Co-operative Association
of Hamilton, a corporation engaged, among other things, in
handling farm produce on commission, all of which plaintiff
well knew, and that defendant, in the course of the company's
business, and for it, did agree with plaintiff to handle said
potatoes for a commission of ten cents per hundredweight,
and that it would pay plaintiff for them as soon as returns

[64 Mont. 28.]

were had from the shipment thereof; that on March 6, 1919, defendant, as manager and agent of the company, and for it, made and rendered an "account of sales" of the potatoes, and that he delivered to plaintiff the company's check for the amount due him, after deducting commissions, transportation charges, and a small account which plaintiff owed the company; that plaintiff retained the said "account of sales" without objection, and indorsed and cashed the company's check and kept the money obtained thereon.

At the trial, after plaintiff had rested, defendant made a motion for a nonsuit, which was overruled. The jury returned a verdict against defendant for $606.05, upon which judgment was entered. A motion for a new trial was overruled, and from the judgment and order overruling said motion these appeals are prosecuted.

The first error specified by defendant, and the only one [1] necessary for the determination of this case, is that the trial court erred in not granting his motion for nonsuit.

Plaintiff was a stockholder in the Equity Co-operative Association of Hamilton. He knew that the defendant was its manager, and that it operated a store at Hamilton. Prior to January 11, plaintiff had attended a meeting of the Equity Association when the proposition of it handling potatoes was discussed. On January 11 he had a conversation with defendant in the Equity store at Hamilton, which resulted in plaintiff's delivery of 86,615 pounds of potatoes into two railroad cars at Grantsdale. Plaintiff testified that in that conversation the pronoun "I" was always used by defendant, and that the Equity Association was never mentioned.

Plaintiff, who was the only witness offered in his behalf on his case in chief, testified at some length as to the details of the conversation, and with reference to the alleged commission deal, all of which is immaterial if the transaction was with the Equity Association.

That the charging of defendant personally with the transaction, whether it be a sale or a commission deal, was an

afterthought of plaintiff, is the only conclusion to be reached from his testimony. In addition to plaintiff's knowledge of the proposition of handling potatoes by the company, and that defendant was manager for the company, he had no independent knowledge that defendant was buying or handling potatoes on his own account. The deal was made at the place of business of the company, and there is no testimony to show that any other than the company's business was transacted there. On January 15 a receipt for the first car of potatoes (which was the only receipt plaintiff received for the delivery of potatoes) was delivered to him, and which was in the words and figures following:

"Hamilton, Montana, Jan. 15, 1919.

"It is understood and agreed that the Equity is to pay for the fruits or produce listed below as soon as returns are made from the sale thereof after shipment, the Equity to take none of the risks of shipment nor stand any loss due to difference or claim, either in regard to quantity or quality, the Equity acting solely as agent of shipper.

"Received of J. A. Bachman, A. R. T. Co. 13735, the following listed fruits or produce for shipment or sale: 376 sks. —43,457 ℔s.—potatoes.

"EQUITY CO-OP. ASS'N, per B. G. S."

On March 8 plaintiff received an "account of sales" from the Equity Association, detailing the initials and numbers of the cars, the grades, weights and prices of all his potatoes and the transportation charges and commissions; an itemized statement of the Equity Association showing his store account with the company and the amount due him from the proceeds of the potatoes after deducting transportation charges, commissions, *etc.*, and his store account, which amount due him after said deductions was $447.87 and there was inclosed with the "account of sales" and itemized statement the Equity Association's check for $447.87.

Plaintiff admitted that he recognized that the cars mentioned in the "account of sales" were the cars in which his

potatoes were loaded, and that the "account of sales" referred to his potatoes, and that he knew the contents of the "account of sales" and the itemized statement, and that he cashed the check and kept the proceeds thereof. Later plaintiff received the following letter:

"Hamilton, Montana, 3–29–19.

"J. A. Bachman, City—Dear Sir: Inclosed check for $6.72 overcharge frt. on car 13235. I inclose letter which is self-explanatory. Respy., Equity Co-operative Association, Anson,"—and with it he received a letter from the Chicago, Burlington & Quincy Railroad Company, written from Kansas City, Missouri, explaining the overcharge mentioned in the above letter, and also with it he received the Equity Association's check for $6.72, which he cashed on April 5 and retained the proceeds thereof.

Although having seen defendant before he instituted this [2, 3] action, plaintiff testified: "I did not tell Mr. Gerer that there was a mistake in the receipts." And there is no pretense on the part of plaintiff that he informed defendant that he was holding him personally liable. The use of the pronoun "I" by defendant is the only evidence even tending to connect him personally with the transaction other than plaintiff's bald statement that he dealt with him personally and not as manager or agent of the company. This positive assertion cannot be taken alone without regard to the rest of his testimony. The legal value of the evidence of a witness is to be determined by its entire contents and not by any single feature, the effect of which may be destroyed by his admissions or contradictions. (*Rood* v. *Murray,* 50 Mont. 240, 146 Pac. 541.)

In the instant case plaintiff's own testimony shows that he was dealing with the known agent of the Equity Co-operative Association of Hamilton, and without informing defendant that he intended to deal with him, and without having any expression of intention from defendant that he (defendant) intended to deal personally rather than for his principal, plain-

tiff seeks to hold defendant individually liable. This is contrary to the well-established principle of law, that where one deals with the agent of a known principal touching on a matter within the scope of the agency he cannot hold the agent, in the absence of satisfactory proof of an intention on the part of the agent to substitute his personal liability for that of the principal. (*Hall* v. *Lauderdale,* 46 N. Y. 70; *Rood* v. *Murray, supra;* 31 Cyc. 1552.) The prominence of the pronoun ''I'' as used by defendant, in view of all of the other testimony of plaintiff, does not remove this presumption. (*Yancey* v. *Northern Pac. Ry. Co.,* 42 Mont. 342, 112 Pac. 533; *Johnson* v. *Baatz,* 62 Mont. 344, 205 Pac. 212.) On the contrary, it affirmatively shows that defendant had no intention of substituting his personal liability for that of his principal, and also that plaintiff knew he was dealing with defendant as the agent of the company; hence the transaction was that of the company. No other conclusion could be drawn. On plaintiff's testimony no judgment against defendant could stand.

The judgment and order are reversed, with directions to enter judgment for the defendant.

*Reversed.*

ASSOCIATE JUSTICES FARR, COOPER, HOLLOWAY and GALEN concur.